IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

OUMAR TOURE, )
 )
      Plaintiff, )
 )
v. ) Civil Action No. 3:10CV744–HEH
 )
UDAK JAMES UBOM and )
UBOM LAW GROUP, PLLC, )
 )
      Defendants. )

## MEMORANDUM OPINION
(Granting Defendants' Motion for Summary Judgment)

This action for legal malpractice is presently before the Court on Defendants' Motion for Summary Judgment, to which Plaintiff has not responded. For the reasons stated below, Defendants' Motion will be granted.

### I. BACKGROUND[1]

Oumar Toure ("Plaintiff") is a black African who resides in Virginia. The Reverend Uduak James Ubom ("Ubom") is an attorney with the Ubom Law Group, PLLC ("the Law Group" or, collectively with Ubom, "Defendants") in Washington, DC. National Coach Works, Inc. is a Fredericksburg, Virginia bus company owned by the Martz Group ("Martz").

---

[1] Because Plaintiff has not responded to Defendants' Motion for Summary Judgment, the Court considers the facts stated in Defendants' supporting memorandum to be undisputed. *See* Fed. R. Civ. P. 56(e)(2) (permitting the court to consider the movant's facts undisputed where the non-moving party fails to object pursuant to Rule 56(c)).

On or about September 10, 2006, Plaintiff was working as a mechanic for National Coach Works, Inc. when he was assaulted by another black co-worker, Reggie Hall ("Hall"). In order to protect Plaintiff, Martz employees briefly separated the two men by locking Plaintiff in a room. Martz immediately terminated Hall, and Plaintiff's supervisor personally drove him to the local magistrate to file a complaint. Hall and Plaintiff filed cross warrants against each other for assault and battery in the Spotsylvania General District Court. Following a trial on November 17, 2006, the court acquitted Plaintiff but found Hall guilty.[2]

Although Plaintiff continued to work for Martz following the incident, he sought to file a charge of discrimination against the company with the Equal Employment Opportunity Commission ("EEOC"). He consulted with several Virginia lawyers, none of whom agreed to take on his EEOC case. Amangou Bile ("Bile"), a friend of Plaintiff who had previously been represented in an EEOC action by the Law Group, referred Plaintiff to the Law Group.

On January 21, 2008, Plaintiff paid a $200 consultation fee and met with Ubom in the Law Group's Washington, DC office. He told Ubom about the 2006 assault and Hall's resulting termination from Martz. He also claimed that another Martz employee, Paul Pesky, had been directing racial slurs toward Plaintiff since 2006. Finally, Plaintiff claimed that Martz had denied Plaintiff overtime and vacation compensation because of his race.

---

[2] The court ordered Hall to pay $80.00 in restitution and continued the matter until May 18, 2007, at which time the charge would be dismissed so long as Hall avoided further contact with Plaintiff.

2

Ubom informed Plaintiff that he might have viable state-law claims for assault, battery, false imprisonment, negligent infliction of emotional distress, harassment, intentional infliction of emotional distress, and possibly even negligent retention. However, because Ubom is not licensed to practice in Virginia,[3] he suggested that Plaintiff obtain Virginia counsel. He suggested that Plaintiff do so quickly because sixteen months had already run against the applicable two-year statute of limitations. Plaintiff responded that he already had a Virginia lawyer, and that he only required the services of Ubom and the Law Group for his EEOC complaint(s).

Ubom advised that he could not file an EEOC claim concerning the 2006 assault because EEOC complaints must be filed within 300 days of the discriminatory act. However, he said that he would gladly handle Plaintiff's future EEOC claims, if any. He asked Plaintiff to contact Defendants if another discriminatory act occurred, and requested documents to substantiate Plaintiff's allegations.

Plaintiff returned to Defendants' office on April 9, 2008, and informed Ubom that a Martz employee called him "Mohamed Ali" on April 5, 2008. Plaintiff perceived the name as derogatory and quit his job. Plaintiff gave Ubom the Martz Employee Handbook, but did not provide any other documents previously requested by Ubom. Ubom supplied Plaintiff with another list of requested documents. Ubom also presented a retainer agreement to Plaintiff. Plaintiff declined to execute the retainer until he could have the document reviewed by his Virginia lawyer, Joseph Grove ("Grove").

---

[3] Ubom is licensed to practice in Maryland, Pennsylvania, and Washington, DC.

Defendants contacted Plaintiff on several occasions between April 16, 2008 and June 6, 2008 to request that Plaintiff correct and sign the EEOC Employment Discrimination Questionnaire and sign the retainer agreement. Plaintiff responded that he could not find the retainer. On June 10, 2008, however, Plaintiff informed Defendants that Grove was in possession of the agreement, and that Plaintiff would return it after getting Grove's advice.

On June 23, 2008, despite the fact that Plaintiff had not yet executed the retainer, Defendants filed an EEOC claim on Plaintiff's behalf. Defendants provided another retainer agreement to Plaintiff, and on July 1, 2008, Defendants advised that they would withdraw from representation on his EEOC claim if he did not return a signed retainer within ten days. Plaintiff returned a signed retainer dated July 15, 2008 on July 17, 2008. Defendants executed the retainer on July 21, 2008, and mailed a signed copy of the agreement to Plaintiff. The retainer limited the Law Group's representation to damages resulting from the events of April 5, 2008—*i.e.*, the "Mohamed Ali" incident.

In 2009, Grove contacted Defendants and threatened to take over Plaintiff's EEOC case. Defendants agreed to relinquish the case to Grove on the condition that Grove enter an appearance. Although Grove agreed, he failed to enter an appearance. At some point thereafter, Grove accused Ubom of being incompetent. Meanwhile, Defendants secured a settlement offer of $6,000 plus rehire from Martz. Plaintiff insisted on obtaining $300,000 from Martz, and, on Grove's advice, rejected the offer.

Plaintiff, through Grove, filed this action for legal malpractice against Defendants in the Circuit Court for the City of Richmond on September 2, 2010.[4] Plaintiff alleges that Defendants failed to advise him about possible state-law claims for assault, false imprisonment, and negligent retention stemming from the 2006 incident with Reggie Hall. He seeks $150,000 in compensatory damages and $50,000 in punitive damages.

Defendants removed the action to this Court on October 15, 2010. This Court granted Defendants a one-day extension of time to file a motion for summary judgment, which they filed on February 11, 2011. Plaintiff has not responded. The matter is ripe for decision.

## II. STANDARD OF REVIEW

Summary judgment is proper where "there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine issue of material fact exists if the evidence, when viewed "in the light most favorable to the non-moving party," *Miller v. Leathers*, 913 F.2d 1085, 1087 (4th Cir. 1990), "is such that a reasonable jury could return a verdict for the nonmoving party," *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510 (1986).

The "party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion" and "demonstrat[ing] the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 2553 (1986). Once the movant meets this initial burden, however, "the

---

[4] Defendants were served with the summons and complaint on or about September 15, 2010. Plaintiff's state-court complaint, which was attached to Defendants' Petition for Removal, is not dated.

5

nonmoving party must come forward with 'specific facts showing that there is a *genuine issue for trial.*'" *Matushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S. Ct. 1348, 1356 (1986) (quoting Fed. R. Civ. P. 56(e)) (emphasis in original). "[A] complete failure of proof concerning an essential element of the [plaintiff's] case necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 323, 106 S. Ct. at 2552. Where the record taken as a whole cannot lead a rational trier of fact to find for the nonmoving party, no genuine issue exists for trial and summary judgment is appropriate. *Matushita*, 475 U.S. at 587, 106 S. Ct. at 1356.

### III. ANALYSIS

Defendants advance two arguments in support of their motion for summary judgment. First, Defendants assert that Ubom cannot be held personally liable because he was at all times working as an agent within the scope of his employment. Second, they contend that Plaintiff has not established a *prima facie* case of legal malpractice.[5] Because Plaintiff's failure to establish a *prima facie* case of malpractice is dispositive of all claims against Defendants, the Court need only address Defendants' second contention.

In order to establish a *prima facie* case of malpractice in Virginia, the plaintiff must plead and prove three elements: (1) that an attorney-client relationship existed

---

[5] In a separate section of their supporting memorandum, Defendants assert that Plaintiff would not have succeeded on his claims of assault, false imprisonment, and negligent retention. (*See* Mem. Fact and Law Supp. Defs.' Mot. Summ. J. [hereinafter Defs.' Mem. L.] 13–17.) Because this argument is essentially a proximate-cause argument (*see id.* at 13), the Court reads it as part and parcel to Defendants' contention that Plaintiff has not established a *prima facie* case of malpractice.

which gave rise to a duty; (2) that the attorney breached that duty; and (3) that the breach was a proximate cause of the claimed damages.[6] *Gregory v. Hawkins*, 251 Va. 471, 475, 468 S.E.2d 891, 893 (1996); *Johnson v. Hart*, 279 Va. 617, 625, 692 S.E.2d 239, 243 (2010). Because Plaintiff contends that Defendants committed malpractice by failing to advise him of state-law claims against Martz for assault, false imprisonment, and negligent retention (Pl.'s Compl. ¶¶ 9, 11, 15), Plaintiff must therefore establish that Defendants had a duty to advise Plaintiff of those state-law claims; that they failed to do so; and that, had Plaintiff been so advised, he would have prevailed on those claims. On the present record, no reasonable juror could conclude that Plaintiff has established a duty or breach thereof.

---

[6] Because this Court has jurisdiction pursuant to 28 U.S.C. § 1332, the Court applies the choice-of-law rules of Virginia, the forum state. *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496, 61 S. Ct. 1020, 1021–22 (1941); *Meson v. GATX Tech. Servs. Corp.*, 507 F.3d 803, 806 (4th Cir. 2007)). In Virginia, legal malpractice actions based on negligent conduct are treated as contract claims. *See O'Connell v. Bean*, 263 Va. 176, 181, 556 S.E.2d 741, 743 (2002); *Cox v. Geary*, 271 Va. 141, 152 624 S.E.2d 16, 22 (2006). Questions concerning contract validity are governed by the laws of the place of contacting. *Fuisz v. Selective Ins. Co.*, 61 F.3d 238, 241 (4th Cir. 1995). Questions concerning the adequacy of performance, however, are governed by the place of performance. *Equitable Trust Co. v. Bratwursthaus Mgmt. Corp.*, 514 F.2d 565, 567 (4th Cir. 1975). Because Plaintiff's claims are based on Defendants' alleged negligent, inadequate performance (*see* Pl.'s Compl. ¶¶ 14–15), the law of the place of performance applies.

The place of performance in this case is an interesting question not addressed by the parties. Ubom is a Washington, DC attorney not licensed to practice in Virginia. He agreed to represent Plaintiff only in connection with his EEOC complaint, which he filed in the EEOC's Richmond Local Office. (*See* Defs.' Mem. L. Ex. 16.) Defendants took for granted in their Motion and supporting memorandum that Virginia law applies, and Plaintiff has not responded or otherwise averred that the laws of the District of Columbia apply to this action. The Court therefore assumes, without deciding, that Virginia law controls. In any event, the essential elements of Plaintiff's claim do not appear to be materially different under the laws of the District of Columbia. *See, e.g., Taylor v. Akin, Gump, Strauss, Hauer & Feld, L.L.P.*, 859 A.2d 142, 147–48 (D.C. 2004).

Under Virginia law, "an action for the negligence of an attorney in the performance of professional services, while sounding in tort, is an action for breach of contract." *Cox v. Geary*, 271 Va. 141, 152, 624 S.E.2d 16, 22 (2006) (quoting *Oleyar v. Kerr*, 217 Va. 88, 90, 225 S.E.2d 398, 400 (1976)). (*See also* Pl.'s Compl. ¶ 15 (conceding that Ubom's alleged failure to advise of state-law claims "amount[ed] to a negligent breach of contract").) "An attorney's duty to act arises from the attorney-client relationship, and the extent of the attorney's duty necessarily depends on the scope of the relationship." *Umphreyville v. Gittins*, 662 F. Supp. 2d 501, 510 (W.D. Va. 2009) (internal citation omitted) (applying Virginia law). "[B]ut for the contract, the attorney owes no duty to the client." *Cox*, 271 Va. at 152, 624 S.E.2d at 22 (citing *O'Connell v. Bean*, 263 Va. 176, 180, 556 S.E.2d 741, 743 (2002)).

In this case, the July 2008 retainer agreement entered into by Plaintiff and Defendants explicitly limited the scope of Defendants' representation to damages arising out of the events which occurred on April 5, 2008—*i.e.*, the "Mohamed Ali" incident. (Defs.' Mem. L. Ex. 11.) It did not cover the 2006 incident involving Reggie Hall which would have formed the basis of Plaintiff's claims for assault, false imprisonment, and negligent retention. (*Id.*) The Virginia Rules of Professional Conduct expressly permit a lawyer to limit the objectives of his representation if the client consents after consultation. Va. Rules Prof'l Conduct R. 1.2(c) (2006). Because Defendants properly limited the scope of their representation, they had no duty to advise Plaintiff of possible causes of action based on the assault by Hall in 2006.

8

This conclusion concerning the scope of Defendants' duties is bolstered by the context in which the parties executed the agreement. At Plaintiff's initial consultation on January 21, 2008, Defendants advised Plaintiff that they could not represent him on his state-law claims, but that they would handle EEOC claims in the future so long as less than 300 days had passed since the discriminatory act. (Mem. Fact and Law Supp. Defs.' Mot. Summ. J. [hereinafter Defs.' Mem. L.] Ex. 17 [hereinafter Ubom Aff.] 1.) Plaintiff responded that he already had a Virginia attorney, and thus he only required Defendants' service with respect to his EEOC claims. (*Id.*) Indeed, Plaintiff was referred to Defendants by Bile, for whom Defendants had previously filed an EEOC charge of discrimination. (Defs.' Mem. L. Ex. 1; *see also* Ubom Aff. 1.) Plaintiff even listed the "[t]ype of [c]ase" on his Client Information Sheet as "[e]mployment and maybe contractor." (Defs.' Mem. L. Ex. 1.) Because Plaintiff has offered no evidence tending to show that Defendants had a duty to advise him of possible state-law claims, his claim of legal malpractice fails as a matter of law.[7]

---

[7] Defendants attached as an exhibit to their supporting memorandum Plaintiff's response to an interrogatory in which Plaintiff stated that he first consulted with Ubom in October 2006. (*See* Defs.' Mem. L. Ex. 1A.) Ubom has no recollection of meeting with Plaintiff in 2006, and maintains that their first meeting was in 2008. (Ubom Aff. 1.) Ubom's position is supported by the record evidence—namely, Plaintiff's Client Information Sheet, which is dated January 21, 2008. (*See* Defs.' Mem. L. Ex. 1.) To the extent that Plaintiff's interrogatory answer creates a dispute concerning the date on which he first met with Defendants, however, the dispute is immaterial: Plaintiff claims only to have *consulted* with Ubom in 2006; he does not claim to have retained Defendants at that time. (*Id.*) In any event, Plaintiff concedes that Defendant advised he was not a criminal lawyer and that "he could represent [Plaintiff] in a lawsuit as far as discrimination charges." (*Id.*)

Moreover, a plaintiff suing for legal malpractice in Virginia must present expert testimony on the applicable standard of care, breach thereof, and proximate cause, unless the claim turns on matters within the common knowledge of a layperson. *Heyward & Lee Constr. Co. v. Sands, Anderson, Marks & Miller*, 249 Va. 43, 57, 453 S.E.2d 270, 272 (1995); *Seaward*

Even if Defendants owed Plaintiff a duty to advise him of potential state-law claims in Virginia, the undisputed facts establish that Defendants fulfilled that duty. Defendants advised that Plaintiff might have state-law claims for assault, battery, harassment, intentional infliction of emotional distress, negligent infliction of emotional distress, false imprisonment, and possibly negligent retention, so long as he filed suit within two years of the incident. (Defs.' Mem. L. 3; Ubom Aff. 2; *see also* Defs.' Mem. L. Ex. 1.) Ubom advised Plaintiff to seek Virginia counsel and to do so quickly, because sixteen months had already run against the applicable two-year statute of limitations. (Ubom Aff. 2.) Plaintiff responded that he already had Virginia counsel, and indeed, he did.[8] (*Id.*)

Because no reasonable juror could conclude that Plaintiff has established duty or breach, Defendants are entitled to judgment as a matter of law on Plaintiff's legal malpractice claim.[9]

---

*Int'l, Inc. v. Price Waterhouse*, 239 Va. 585, 591–92, 391 S.E.2d 283, 287 (1990). Whether an attorney has an affirmative duty at consultation to advise a prospective client of all causes of action which could be brought in a jurisdiction in which the attorney is not licensed to practice is a matter not within the common knowledge of a layperson. Accordingly, Plaintiff would need to present expert testimony in order to establish the applicable standard of care. Plaintiff has not proffered expert testimony on any of the three essential elements in this case.

[8] Plaintiff was represented by Philip Sasser, Jr., on his criminal assault case, and, although it is unclear when exactly Grove undertook representation, Plaintiff took Defendants' retainer agreement to Grove for review sometime between April 9, 2008 and July 2008.

[9] Even if Plaintiff established duty and breach, he has not offered any evidence tending to show that Defendants' purported failure to advise him of possible state-law claims proximately caused his claimed damages, at least with respect to Plaintiff's underlying claims for false imprisonment and negligent retention. In order to establish the proximate cause element, a plaintiff must present "case-within-a-case" evidence to show that, but for the attorney's negligence, he would have prevailed in the underlying case. *Whitley v. Chamouris*, 265 Va. 9, 11, 574 S.E.2d 251, 252–53 (2003). The record contains no indication that Plaintiff would have prevailed on claims of false imprisonment or negligent retention. To the contrary, it is undisputed that Martz briefly

## IV. CONCLUSION

For the reasons stated above, Defendants' motion for summary judgment will be granted.

An appropriate Order will accompany this Memorandum Opinion.

                                       /s/
                               Henry E. Hudson
                               United States District Judge

Date: March 15, 2011
Richmond, VA

---

separated Hall and Plaintiff for Plaintiff's own protection (*see* Defs.' Mem. L. 15), and Plaintiff has not offered any evidence to establish that Martz knew that Hall or any other employee had violent tendencies (*see* Ubom Aff. 1).